IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY BETH ARONOW, M.D.,<br>*Plaintiff*,<br><br>v.<br><br>RETINA FIRST LLC, et al.,<br>*Defendants* | No. 23-cv-0224-ABA |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Beth Aronow, M.D. and Defendant Ingrid Zimmer-Galler, M.D. are accomplished ophthalmologists. Dr. Zimmer-Galler owns Defendant Retina First, an ophthalmology practice. In 2021-2022, they negotiated going into business together, allegedly envisioning that Dr. Aronow would run a new Retina First branch. Those negotiations fell through. But in the meantime, Dr. Aronow alleges, she spent sixteen months "employed by Retina First" pursuant to an oral employment agreement, working a significant number of hours, but not being paid for them. ECF No. 1 at 1 ("Compl."). She has now brought this case, alleging violations of the Fair Labor Standards Act and Maryland Wage Payment and Collection Law, and also asserting claims for unjust enrichment, conversion, and negligent and intentional misrepresentation. Defendants have moved to dismiss all claims. No hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, the Court will grant in part and deny in part the motion to dismiss.

I. **BACKGROUND**[1]

For a time, Drs. Aronow and Zimmer-Galler were colleagues at the Johns Hopkins Wilmer Eye Institute; Dr. Zimmer-Galler's position was as medical director of the Institute's Frederick, Maryland location. Compl. ¶¶ 37-39. They developed a friendship, "based in part on their shared experience of having lived in Frederick County, Maryland." *Id.* ¶ 40. In 2017, Dr. Aronow moved to Boston, to accept a faculty position at Massachusetts Eye and Ear, a specialty hospital affiliated with Harvard Medical School. *Id.* ¶ 41. In May 2020, Dr. Zimmer-Galler left her position with the Wilmer Eye Institute, and opened her own practice, Retina First, a retina specialty center in Mt. Airy, Maryland. *Id.* ¶ 44. Dr. Aronow alleges that Dr. Zimmer-Galler also was interested in opening a practice in Frederick, but due to a "restrictive covenant" was "barred . . . from providing retina treatment to patients in certain areas of Frederick until May 2022." *Id.* ¶¶ 45-46.

Against that backdrop, Dr. Aronow alleges, Dr. Zimmer-Galler recruited her to leave her faculty position in Boston to open a Retina First office in Frederick, with both allegedly envisioning Dr. Aronow first "becoming employed by Retina First" and then "taking an ownership interest" in the practice. *Id.* ¶¶ 46-48. In particular, Dr. Aronow alleges, Dr. Zimmer-Galler "promised Dr. Aronow ownership in Retina First if Dr. Aronow would open, market, and staff a Retina First location in Frederick." *Id.* ¶ 49. As of January 2021, an attorney engaged by

---

[1] At this stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). In Defendants' briefs, they refer to facts and documents that are extrinsic to the complaint. The Court disagrees with Defendants that the majority of these documents, including equipment agreements and emails with draft documents, can be considered by the Court without converting the present motion into a motion for summary judgment, which the Court declines to do. Thus, this section is comprised of only allegations from the complaint.

Dr. Aronow and Dr. Zimmer-Galler had prepared a draft agreement regarding their joint ownership of Retina First. *Id.* ¶ 54. In or about July 2021, Dr. Aronow alleges, "[i]n reliance on these promises" she "resigned from her position at Harvard and moved her family from Boston to Frederick." *Id.* ¶¶ 53, 56.

Dr. Aronow alleges that from July 2021 through October 2022, she worked for Retina First but was not paid, and also was not granted an ownership interest in the company. *Id.* ¶¶ 1, 3, & 18-19. She further alleges that, in reliance on Dr. Zimmer's representations and assurances that "a final agreement would be reached," *id.* ¶ 55, she "entered into lease agreements on behalf of Retina First for the lease of ophthalmic equipment to be used exclusively at Retina First's Frederick office," for which she continued to pay, even after she stopped working for Retina First. *Id.* ¶¶ 20, 57. Dr. Aronow alleges that after she left Retina First in August 2022, Defendants continued to use the equipment that Dr. Aronow had leased. *Id.* ¶ 57-59.

Dr. Aronow alleges that when she opened the Frederick branch of Retina First in September 2021, "[t]he agreement to formalize Dr. Aronow's ownership interest in Retina First . . . remained incomplete" but that "Dr. Zimmer-Galler continued to assure Dr. Aronow that she would receive an ownership interest in Retina First." *Id.* ¶¶ 61-62. Dr. Aronow alleges that, during this period, Retina First and Dr. Zimmer-Galler confirmed her status as an employee by telling their tax advisers, health insurer, and bank that Dr. Aronow was an employee. *Id.* ¶¶ 63-66. Sometime after July 2022, while the parties continued to draft an ownership agreement, and in light of various actions by Dr. Zimmer-Galler, Dr. Aronow began to believe "that, despite earlier promises and representations, Dr. Zimmer-Galler was not prepared or willing to allow Dr. Aronow to have any ownership interest in or material control of Retina First." *Id.* ¶¶ 74-80. As a result, Dr. Aronow resigned from Retina First on August 30, 2022, but continued to see patients

through November 4, 2022. *Id.* ¶¶ 83-87. Dr. Aronow contends that Retina First neither paid her wages that were due, nor reimbursed her for the expenses she incurred including for the leased equipment. *Id.* ¶¶ 88, 90.

On January 23, 2024, Dr. Aronow filed her complaint alleging a failure to pay wages and overtime under the Fair Labor Standards Act ("FLSA"), and violations of the Maryland Wage Payment and Collection Law ("MWPCL"), stemming from the alleged failure to pay wages. She also has asserted claims for unjust enrichment, conversion, and negligent and intentional misrepresentation. Defendants filed a motion to dismiss all counts (ECF No. 11, "Defs.' Mem."), Dr. Aronow filed a brief in opposition (ECF No. 20, "Opp."), and Defendants filed a reply (ECF No. 24, "Reply").

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As noted above, when considering such a motion, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

III.     DISCUSSION

    A.     **Failure to Pay Minimum Wage and Overtime in Violation of the FLSA (Counts I & II)**

Dr. Aronow contends that Defendants' alleged failure to pay her wages and overtime violates the FLSA, 29 U.S.C. §§ 207(a) and 216(b). While the FLSA does protect workers' rights to wages and overtime, there are some exemptions to coverage. Section 213(a) expressly exempts "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has issued regulations interpreting that exemption. One category of individuals that DOL has concluded are exempt are employees who hold "valid license[s] or certificate[s] permitting the practice of law or medicine or any of their branches and [are] actually engaged in the practice thereof." 29 C.F.R. § 541.304(a)(1). The parties here do not dispute that the DOL regulations interpreting FLSA are valid, and control whether Dr. Aronow states a claim under FLSA. Defs.' Mem. at 14; Opp. at 10.

"The FLSA exemptions 'are affirmative defenses to an FLSA claim,' and they must 'be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Williams v. GENEX Servs., Inc.*, No. 13-cv-1942-MJG, 2014 WL 4388360, at *2 (D. Md. Sept. 4, 2014), *aff'd*, 809 F.3d 103 (4th Cir. 2015) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Although an affirmative defense generally cannot be ruled upon until and unless raised in an answer, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" an affirmative defense may be considered in determining whether a plaintiff has stated a claim on which relief can be granted. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

5

Here, Dr. Aronow points to various "capacities" in which she "worked for Retina First" that were *not* "strictly as a physician engaged in seeing patients," including "substantial administrative, operations, project management, [and] training," "obtain[ing] leases," working on "[c]onstruction, redesign, and build-out of the Frederick office," and working to "build Frederick referral sources" and other marketing efforts. Opp. at 12-13. Thus, Dr. Aronow argues, because she allegedly engaged in administrative and marketing tasks and not *only* the practice of medicine, the FLSA "professional capacity" exemption does not apply. Dr. Aronow expressly alleges in her complaint that at least part of her work for Retina First did involve patient care, *i.e.* practicing medicine as an ophthalmologist. *See, e.g.*, Compl. ¶¶ 61, 74, 75, 83, 87. Thus, the question presented by Defendants' motion to dismiss Plaintiff's FLSA claims is this: where a plaintiff undisputedly had a medical license and was engaged in the practice of medicine for at least a substantial part of her work, but alleges other parts of her work did not involve the practice of medicine, was the plaintiff "actually engaged in the practice" of medicine within the meaning of 29 C.F.R. § 541.304(a)(1), thereby rendering her exempt from FLSA's minimum wage and overtime requirements?

As an initial matter, Dr. Aronow principally relies on cases under DOL regulations other than § 541.304, specifically 29 C.F.R. § 541.300, which provides a "[g]eneral rule for professional employees," and 29 C.F.R. § 541.301, which applies to "[l]earned professionals," namely employees whose "primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," 29 C.F.R. § 541.301(a). Dr. Aronow may or may not qualify as exempt under one or both of those regulatory interpretations of who qualifies as someone employed in a "bona fide . . . professional capacity," 29 U.S.C. § 213(a)(1). The Court agrees

6

with Dr. Aronow that, based on the allegations in the complaint as construed in her favor, her "*primary* duty" may very well have not been "strictly as a physician engaged in seeing patients." *See* Pl.'s Opp. at 12, 14 (emphasis added). But the Court need not decide what her "primary" duty was, because Defendants rely on a different DOL rule tailored for the "[p]ractice of law or medicine," 29 C.F.R. § 541.304.

The § 541.304 exemption does not include or incorporate the "primary duty" analysis from § 541.300. Instead, § 541.304 provides that an "'employee employed in a bona fide professional capacity' in section 13(a)(1) of the Act *also* shall mean" an "employee who [1] is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and [2] is actually engaged in the practice thereof." 29 C.F.R. § 541.304(a)(1) (emphasis added). DOL has ruled that the "primary duty" analysis in § 541.300 does not apply to physicians who are "actually engaged in the practice [of medicine]." 29 C.F.R. § 541.304(a)(1); *see id.* § 541.304(d) ("The requirements of § 541.300 and subpart G (salary requirements) of this part do not apply to the employees described in this section."). In other words, DOL has not imposed a "primary duty" analysis when considering whether a person who is "actually engaged in the practice" of medicine constitutes a "bona fide professional" for FLSA purposes. The cases Dr. Aronow cites that apply the § 541.300 "primary duty" analysis are thus inapposite. *See* Opp. at 10-11, 14 (citing *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 960 (D. Ariz. 2020), *Edwards v. Audubon Ins. Grp.*, No. 02-cv-1618-WS, 2004 WL 3119911, at *3-*4 (S.D. Miss. Aug. 31, 2004), and *Williams*, 2014 WL 4388360, at *2). Instead, the question of whether Dr. Aronow's allegations render her as having been "employed in a bona fide . . . professional capacity," 29 U.S.C. § 213(a)(1), turns on whether she was "actually engaged in the practice" of

7

medicine within the meaning of 29 C.F.R. § 541.304 during the period of time relevant to her FLSA claims.

The parties do not cite any cases where a court considered whether some portion, but not all, of an employee's duties fell outside of the practice of medicine or law when considering whether 29 C.F.R. § 541.304 applied, and this Court is not aware of any either. The two cases Dr. Aronow cites that arose under § 541.304 do not shed light on the question presented here, because both involved situations where the court was required to determine whether an employee's duties amounted to engaging in the practice of medicine or law *at all*. In *Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*, 620 Fed. App'x 37 (2d Cir. 2015), the question was whether the plaintiff, who conducted outsourced document review and alleged he "exercised no legal judgment whatsoever," was "engage[d] in the practice of law." *Id.* at 45. Similarly, in *McNeely v. Metro. Life Ins. Co.*, 376 F. Supp. 3d 225 (S.D.N.Y. 2019), the plaintiff dentists "were not treating or providing services to patients" but rather "were reviewing claims for services to assist MetLife in determining whether the services were dentally necessary and should be reimbursed," activities that "do not fall under any of the relevant definitions of 'practice of dentistry.'" *Id.* at 231. Here, Plaintiff does not dispute, and indeed alleges, that at least some of her time working for Retina First *did* involve the practice of medicine. *See supra* (citing Compl. ¶¶ 61, 74, 75, 83, 87).

Thus, this case presents what appears to be a question of first impression: Does a physician qualify as "actually engaged in the practice" of medicine where her work, as Dr. Aronow puts it, "included substantial administrative, operations, project management, training, and marketing work, as well as a wide range of other non-physician tasks," Opp. at 3? Although Dr. Aronow's allegations must, of course, be accepted as true at this stage, the question whether

8

her work responsibilities as alleged render her as having been "actually engaged in the practice [of medicine]" is a question of law, given that a Rule 12(b)(6) motion "tests the sufficiency of a complaint," *King*, 825 F.3d at 214.

The Court concludes that based on Dr. Aronow's allegations, she was actually engaged in the practice of medicine—and thus even accepting all her allegations as true, she has not stated a claim under FLSA on which relief can be granted. The Oxford English Dictionary defines "actually" as "[i]n action; in fact, in reality, really."[2] Merriam-Webster's Dictionary defines "actually" as "in act or in fact."[3] There is no spectrum of "actually" under these definitions. If someone is "actually" doing something, they are, in fact, doing it, regardless of whether they are doing other things as well. This is largely a binary choice: either Dr. Aronow was actually engaging in the practice of medicine, or she was not, regardless of whether she was also performing other tasks during the relevant time. Here, based on the allegations in the complaint, there is no dispute that Dr. Aronow was "actually engaged" in the practice of medicine while working for Retina First. Compl. ¶ 61 (alleging that the Retina First Frederick office was "ready to open for patient care" by September 2021, eight months before Dr. Zimmer-Galler's restrictive covenant expired, *see* Compl. ¶ 45); *id.* ¶ 74 (alleging that, including during the months before Dr. Zimmer-Galler was permitted to practice in Frederick, Dr. Aronow was seeing patients in Frederick); *id.* ¶ 75 (alleging that Dr. Zimmer-Galler "impeded Dr. Aronow's efforts to build the practice at Retina First's Frederick office"); *id.* ¶¶ 83 & 87 (alleging that although Dr. Aronow "resigned from her employment with Retina First" on August 30, 2022, she "continue[d]" to see Retina First patients through November 2022); *see also* Opp. at 14 (agreeing

---

[2] "Actually." *Oxford English Dictionary*, Oxford UP, https://doi.org/10.1093/OED/8881239718.
[3] "Actually." *Merriam-Webster's Unabridged Dictionary*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/actually.

that Dr. Aronow "did in fact engage at some level . . . in the practice of medicine"). Thus, Dr. Aronow is exempt from the protections of sections 206 and 207 of FLSA as interpreted by the Department of Labor in its applicable regulation, 29 C.F.R. § 541.304.

This point is driven home by contrasting the definition of "actually" with "primary," the latter of which controls the analysis of an individual's duties in the other exemptions discussed above *other* than the relevant exemption in § 541.304. DOL defines "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Similarly, the Oxford English Dictionary defines "primarily" as "[t]o a great or the greatest degree; for the most part, mainly."[4] Merriam-Websters defines it as "for the most part: chiefly."[5] These definitions implicate a spectrum of action—at some point, an action become primary because it is done the most, or more relative to other actions. The Department of Labor chose to apply a "primary" standard for determining whether professionals *other than* physicians and lawyers are exempt from FLSA's overtime and minimum wage provisions. It explicitly omitted that comparative approach when it came to physicians and lawyers, instead exempting those professionals where they are "actually engaged in the practice" of law or medicine. 29 C.F.R. § 541.304(a)(1). Where Congress uses two terms in a statute, courts generally presume that Congress meant the terms to bear different meanings. *See, e.g.*, *Bailey v. United States*, 516 U.S. 137, 146 (1995) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."). The parties have not identified any reason that interpretive concept should not apply to DOL's regulations interpreting the FLSA exemption provisions. Dr. Aronow's proposed construction of § 541.304(a)(1) would collapse the

---

[4] "Primarily." *Oxford English Dictionary*, Oxford UP, https://doi.org/10.1093/OED/1088608039.
[5] "Primarily." *Merriam-Webster's Unabridged Dictionary*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/primarily.

distinction that the agency chose to adopt between these categories of professionals for determining whether the "bona fide . . . professional capacity" exemption applies. 29 U.S.C. § 213(a)(1).

This case does not raise the question, nor does this Court address, whether a licensed doctor or lawyer is "actually engaged" in medical or legal practice if that work comprises only a *de minimis* portion of the person's work. Here, the complaint alleges that a substantial part of Dr. Aronow's practice was seeing patients as an ophthalmologist. *See* Compl. ¶¶ 45, 61, 74-75, 83, 87. Indeed, in addition to these allegations, under 29 C.F.R. § 541.703, exempt work includes work that is "directly and closely related" to and "contribute[s] to or facilitate[s] performance of exempt work" such as the practice of medicine. 29 C.F.R. § 541.703(a). Dr. Aronow lists duties that she contends were not the practice of medicine. Opp. at 12 (citing Compl. ¶¶ 56, 57, 60, 68, 69, and 81). At least some of these activities are clearly "directly and closely related" to her medical practice, thus further confirming that her work was exempt from FLSA's minimum wage and overtime requirements.

For these reasons, based on the allegations in the complaint, Dr. Aronow had a valid medical license and was "actually engaged" in the practice of medicine while working for Retina First. Thus, the complaint itself establishes that the "practice of . . . medicine" exemption applies, and thus this is one of those "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *See Goodman*, 494 F.3d at 464. The Court concludes that, by virtue of § 541.304, Dr. Aronow is exempt from the protections of FLSA's minimum wage and overtime requirements. As a result, Dr. Aronow cannot allege a facially valid FLSA claim, and Counts I and II of her complaint must be dismissed with prejudice.

### B. Failure to Pay Wages in Violation of the MWPCL (Count III)

Dr. Aronow next alleges that Defendants violated the MWPCL by employing her but failing to, among other things, "set regular pay periods," Md. Code Ann., Lab. & Empl. § 3-502(a)(1)(i), "pay [her] at least once in every 2 weeks or twice in each month," *id.* § 3-502(a)(1)(ii), "pay a wage in either United States currency; or by a check that, on demand, is convertible at face value into United States currency," *id.* § 3-502(c)(1)-(2), and pay her "wages due for work that [she] performed before the termination of employment," *id.* § 3-505(a). The MWPCL "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 819 A.2d 354, 362 (Md. 2003). Nonetheless, Defendants contend that Dr. Aronow's MWPCL claim fails because she does not provide the details of her alleged employment contract with Defendants, including her compensation rate and that, instead, "there was no meeting of the minds as to how she would be compensated as an employee, because she was not in fact an employee." Reply at 5.[6]

There is clearly a dispute between the parties regarding whether Dr. Aronow was an employee of Retina First. The complaint, however, which controls whether Dr. Aronow has stated a claim under the MWPCL, adequately alleges that Dr. Aronow was an employee and that she was not paid for work she performed for Defendants at any intervals, let alone regular

---

[6] Defendants also argue that Dr. Aronow is not actually alleging a MWPCL claim, but rather a claim under the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-413, 3-415, and 3-420. Defs.' Mem. at 16-17. Defendants then note that FLSA's exemptions, including 29 C.F.R. § 541.304, apply to claims brought under MWHL. *Id.* at 17 (citing *Drubetskoy v. Wells Fargo Bank, NA.*, 13-cv-2196-CCB, 2013 WL 6839508, at *7 (D. Md. Dec. 20, 2013); 29 U.S.C. § 213(a)(l); and Md. Code Ann., Lab. & Empl. § 3-403(a)). But, as Dr. Aronow makes clear in her opposition brief, she is making a claim under MWPCL, not MWHL. Opp. at 19. Defendants have not suggested that the relevant FLSA exception applies to MWPCL. Thus, the Court rejects this argument.

intervals. *See* Compl. ¶¶ 1-3, 11, 18, 48-50, 63-70, 81, 87-88, 90. To the extent there was an employment agreement between the parties, the details will be adduced in discovery. A cause of action under the MWPCL "assumes the existence of some sort of underlying contract" but it "does not require necessarily analysis of the parties' underlying contract." *Cunningham v. Feinberg*, 107 A.3d 1194, 1203-04 (Md. 2015). For purposes of this motion, the Court concludes that Dr. Aronow has adequately alleged that she was employed by Retina First and that, by the termination of her employment, she had not been paid wages due at regular intervals for work she performed. Therefore, Defendants' motion to dismiss Count III will be denied.

C.     **Unjust Enrichment (Count IV)**[7]

In Count IV, Dr. Aronow alleges that in reliance on Dr. Zimmer-Galler's promises of an ownership stake in Retina First, Dr. Aronow performed work for Retina First and leased equipment to be used at Retina First's Frederick office, which conferred over $900,000 in benefits to Defendants. Compl. ¶ 116. Dr. Aronow alleges that, at least as of the filing of the complaint and after she had left Retina First, she had not been paid for any work and yet continued to pay for the equipment while Defendants used the equipment without reimbursing her. *Id.* ¶¶ 18, 21, 59, 90 & 116.

For a claim of unjust enrichment, Dr. Aronow must allege that she conferred a benefit upon Defendants, Defendants knew or appreciated the benefit, and Defendants accepted or retained the benefit "under such circumstances as to make it inequitable for the defendant to

---

[7] The Court recognizes that Dr. Aronow cannot ultimately maintain a claim based on an employment contract and an unjust enrichment claim over the same subject. *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000). However, at this point, while salient facts are in dispute, she may present arguably conflicting alternate theories of recovery. Fed. R. Civ. P. 8(d)(2); *CDC-LCGH, LLC v. Mayor*, 313 F. App'x 637, 641-42 (4th Cir. 2009).

retain the benefit without the payment of its value." *Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665, 684 (Md. App. 2008) (quoting *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007)). The Court concludes that Dr. Aronow's allegations described above meet these requirements. Defendants argue that any "benefit" from Dr. Aronow's preparation to open the Frederick office inured to Dr. Aronow's benefit, not Dr. Zimmer-Galler's. Defs.' Mem. at 18. But Dr. Aronow's allegations must be accepted as true at the pleading stage, and Dr. Aronow's factual allegations sufficiently allege that the work she performed conferred a benefit upon Defendants. Thus, Defendants' motion to dismiss as to Count IV will be denied.

### D. Conversion (Count VII)

In Count VII, Dr. Aronow asserts a claim for conversion. Conversion requires "a physical act combined with a certain state of mind." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004). "The physical act can be summarized as 'any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Id.* (quoting *Allied Investment Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999)). The minimum state of mind must be "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* at 836 (quoting *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (Md. 1985)).

Dr. Aronow alleges that she leased (or purchased) equipment for use in the Frederick Retina First office and that after she left Retina First, Defendants exercised dominion over the equipment by continuing to use it and refused to assume the associated payment obligations. Compl. ¶¶ 21, 57-59, 90, 147. Defendants contend that Dr. Aronow abandoned the equipment and that she has failed to allege that Defendants attempted to prohibit her from taking the equipment with her or at some future time. Defs.' Mem. at 23-24. But accepting Dr. Aronow's

14

factual allegations as true and viewing all reasonable inferences in the light most favorable to her, the Court concludes that by alleging that Defendants continued to use the equipment after Dr. Aronow no longer worked in that office and, thus, could not use the equipment herself, Dr. Aronow has adequately pled that Defendants intended to and did exercise dominion over the equipment in a way that was inconsistent with Dr. Aronow's rights. Discovery may turn out differently, but for purposes of Defendants' motion to dismiss, the Court must accept Dr. Aronow's allegations as true. Therefore, the Court will deny Defendants' motion to dismiss Count VII of the complaint.

### E. Negligent Misrepresentation and Intentional Misrepresentation/Fraud (Counts V and VI)

In their motion to dismiss, Defendants address Dr. Aronow's negligent misrepresentation and intentional misrepresentation/fraud claims together. Dr. Aronow has pled the two claims in the alternative, and they contain many of the same allegations. The elements of negligent misrepresentation and intentional or fraudulent misrepresentation are largely similar, differing primarily in the required intent. Intentional or fraudulent representation requires that

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005). Negligent misrepresentation requires that

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement;

> and (5) the plaintiff suffers damage proximately caused by the
> defendant's negligence.

*White v. Kennedy Krieger Inst., Inc.*, 110 A.3d 724, 747 (Md. App. 2015) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (Md. 2007)).

Defendants first argue that because the negligent misrepresentation claim essentially mirrors the intentional misrepresentation claim, both are subject to the heightened fraud pleading standard in Federal Rule of Civil Procedure 9(b) but that neither claim meets that standard. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," whereas "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see Rosedale v. CarChex, LLC*, No. 19-cv-2780-SAG, 2020 WL 998740, at *6 n.3 (D. Md. Mar. 2, 2020) (holding that the negligent misrepresentation claim in that case was subject Rule 9(b) because it "d[id] not allege any of the customary elements of negligent misrepresentation, and instead clearly alleges intentional deception"). Dr. Aronow disagrees that the heightened standard applies to her negligent misrepresentation claim. The Court need not decide this issue, however, because it concludes that Dr. Aronow has adequately pled both claims under Rule 9(b).

Pursuant Rule 9(b), fraud claims "must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). These allegations are sometimes "referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

Here, Dr. Aronow alleges that in the summer of 2020, Dr. Zimmer-Galler offered her an ownership interest in Retina First in exchange for starting a Frederick branch of the business, and that, in the meantime, they agreed Dr. Aronow would be paid as an employee. Compl. ¶¶ 49-50, 121-24, 133-36. Dr. Aronow alleges that she traveled from Boston to Frederick in 2020 to meet with Dr. Zimmer-Galler and discuss the offer. *Id.* ¶¶ 123, 135. Dr. Aronow alleges that although Dr. Zimmer-Galler owed her a duty of care to provide accurate information about these promises, she knowingly (or negligently) and falsely represented to Dr. Aronow that she would be an employee, that she would be paid, and that she would be given an ownership interest in Retina First. Compl. ¶¶ 50, 54, 81, 129, 137-38. Dr. Aronow further alleges that Dr. Zimmer-Galler made these allegedly false representations with the intent to deceive Dr. Aronow and to have her act in reliance on these statements, specifically "so that Dr. Zimmer-Galler would have a head start on the Frederick office before [Dr. Zimmer-Galler's] restrictive covenants expired" in 2022. *Id.* ¶¶ 125-128, 137-41. Dr. Aronow alleges that in July 2021, she "undertook material actions, including moving her family from Boston to Frederick, leaving her position at Harvard, purchasing over $300,000 worth of ophthalmic equipment as an agent of Retina First and Dr. Zimmer-Galler, incurring debt on behalf of Retina First, and working for sixteen months to make Retina First's Frederick office a success, in reasonable reliance on Dr. Zimmer-Galler's representations and promises." *Id.* ¶¶ 129, 142. Dr. Aronow details the various times Dr. Zimmer-Galler and Retina First represented to others that she was employee, including on August 13, 2021, to their tax accountant, on February 7, 2022, to their health insurer, and on another date to their bank. *Id.* ¶¶ 63-66. Dr. Aronow further alleges she was "was justified in her reliance because of the many representations and promises by Dr. Zimmer-Galler that she would be an owner of Retina First and receive appropriate compensation," and that as a result, she

incurred damages. *Id.* ¶¶ 130-131, 143-44. These allegations meet the heightened pleading standard in Rule 9(b), as they adequately provide the "who, what, when, where, and how" of the alleged fraud. *See U.S. ex rel. Wilson*, 525 F.3d at 379.

Defendants also argue that the promises Dr. Aronow alleges were made by Dr. Zimmer-Galler were unenforceable statements about potential future conduct or events. Defs.' Mem. at 20-21; *see Felder v. MGM Nat'l Harbor, LLC*, No. 18-cv-3405-PJM, 2019 WL 3860272, at *4 (D. Md. Aug. 15, 2019) ("[P]romises about potential future employment opportunities, or general promissory statements, are not actionable as fraud, unless the employer did not intend to perform on those promises.") (citing *Miller v. Fairchild Indus., Inc.*, 629 A.2d 1293, 1302 (Md. App. 1993)). It is true that "Maryland law is clear that . . . 'fraud cannot be predicated on statements that are merely promissory in nature, or upon expressions as to what will happen in the future.'" *Parker v. Columbia Bank*, 604 A.2d 521, 528 (Md. App. 1992) (quoting *Levin v. Singer*, 175 A.2d 423, 431-432 (Md. 1961)). But "'the existing intention of a party at the time of contracting is a matter of fact' and 'fraud may be predicated on promises made with a present intention not to perform them.'" *Id.* (quoting *Levin*, 175 A.2d at 431-432).

Here, viewing the allegations in the light most favorable to Dr. Aronow, she has adequately alleged that Dr. Zimmer-Galler never intended to fulfill the promises and that, instead, the promises were made to induce Dr. Aronow to build the Frederick Retina First office so that Dr. Zimmer-Galler could take the office over after 2022, once she was able to practice in that geographical area. Compl. ¶¶ 45-46, 127, 139. Thus, the allegations assert actionable fraud rather than unactionable statements about possible future conduct.

Finally, Defendants argue that Dr. Aronow's allegations are not plausible in light of extrinsic facts proffered by Defendants and their own competing narrative. The Court concludes,

however, that based solely on the complaint, Dr. Aronow's allegations are adequately plausible to meet the general pleading standards of *Twombly* and *Iqbal* as described above.

For these reasons, the Court will deny Defendants' motion to dismiss Counts V and VI of the complaint.

## IV.   CONCLUSION

Defendants' motion to dismiss (ECF No. 11) is GRANTED as to Plaintiff's FLSA claims in Counts I and II of the complaint, which are DISMISSED with prejudice. The remainder of Defendants' motion is DENIED.

Date: September 5, 2024

/s/
Adam B. Abelson
United States Magistrate Judge